# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KENNETH S. COBEY, #185-525, 226017, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-1994 |
| WEXFORD HEALTH SOURCES, INC.,[1] | * | |
| PAUL MATERA, M.D., | | |
| KATHLEEN GREEN, Warden (former),[2] | * | |
| RICKY FOXWELL, Warden (former),[3] | | |
| WALTER WEST, Assistant Warden, | * | |
| ROBERT STERLING, M.D., | | |
| JENNIFER PATTERSON, Registered Nurse, | * | |
| SHEILA KERPELMAN, Nurse Practitioner, | | |
| BEN OTEYZA, M.D.., | * | |
| DEBORAH TABULOV, Nurse Practitioner, | | |
| JUANITA STANFORD, Sergeant, | * | |
| CORRECTIONAL MEDICAL SERVICES, INC., | * | |
| BRUCE FORD, Physicians' Assistant, | | |
| ROBERT HANKE, Assistant Warden (Former)[4] | * | |
| | * | |
| *Individually and in their official capacities,* | | |
| | * | |
| Defendants | | |

## MEMORANDUM OPINION

Plaintiff Kenneth S. Cobey, and inmate at Jessup Correctional Institution ("JCI"), filed a verified Complaint asserting an array of constitutional and common law negligence claims arising from treatment received at Eastern Correctional Institution ("ECI") in connection with his hip replacement. Cobey names as Defendants healthcare providers Correctional Medical Services,

---

[1] The Clerk shall amend the docket to reflect the proper spelling and full title of each Defendants' name, as noted in this caption.
[2] Warden Green retired on July 1, 2016. *See* ECF No. 17-5, Decl. of Kathleen Green.
[3] Warden Foxwell retired on January 1, 2019. *See* ECF No. 17-4, Decl. of Ricky Foxwell.
[4] Robert Hanke was Assistant Warden at ECI from January 12, 2010 until his retirement on July 1, 2016. *See* ECF No. 17- 6, Decl. of Robert Hanke.

Inc. ("CMS"), Wexford Health Sources, Inc. ("Wexford") and Wexford employees Paul Matera, M.D.; Jennifer Patterson, R.N.; Bruce Ford, P.A.; Sheila Kerpelman, N.P.; Ben Oteyza, M.D.; and Deborah Tabulov, N.P. (the "Medical Defendants"). The Complaint also names Dr. Robert Sterling, a University of Maryland Medical System ("UMMS") surgeon who performed Cobey's hip replacement surgery in 2004, and Maryland Correctional Defendants Ricky Foxwell, Warden of ECI; Walter West, ECI's Assistant Warden; Kathleen Green and Robert Hanke, ECI's former Warden and Assistant Warden, respectively; and Sergeant Juanita Stanford, who works at ECF's west compound (the "Correctional Defendants").

Essentially, Cobey asserts that the Medical Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment by failing to provide prompt surgery and other medical treatment for his failing hip prosthetic. The Medical Defendants delayed and deferred proper treatment, and as a result, avers Cobey, he suffers from permanent disfigurement and chronic pain. Cobey further alleges that the Correctional Defendants have retaliated against him for filing several inmate grievances in which he complained about the substandard medical care.

Both the Medical and Correctional Defendants have filed motions to dismiss or, alternatively, for summary judgment (ECF Nos. 13, 17 and 21) accompanied by affidavits and exhibits. Cobey's response includes exhibits and affidavits to supplement the record evidence (ECF No. 23). The Court has carefully reviewed the submissions and finds no hearing necessary. *See* Loc. Rule 105.6 (2018). For the following reasons, the motions are granted.[6]

---

[6] Cobey's request that this Court order he be provided "immediate surgery" for his hip condition, Compl., ECF No. 1, p. 11, ¶ 97, is moot. Cobey underwent hip revision surgery on April 2, 2018, more than six weeks before he filed this lawsuit. ECF No. 13-4, p. 83.

**I.  Background**

Cobey filed his first federal suit in 2016, seeking a court order that compelled examination of his hip by an "outside" specialist so that surgery could be scheduled.  *See Cobey v. Department of Public Safety and Correctional Services, et al.,* Civil Action No. PX-16-3878 (D. Md. 2016), ECF No. 1, p. 4.  Cobey alleged that he had submitted sick call slips concerning his condition since 1996, but did not receive a left hip total arthroplasty, commonly known as a hip replacement, until November 1, 2004.  *Id.,* p. 2, ¶¶ 10-11, 13.  The Court dismissed certain named defendants who were not subject to suit under 42 U.S.C. § 1983, *See id.* (Mem. Op. Dec. 14, 2016, p. 3), and noted that claims against CMS personnel were likely subject to dismissal on statute of limitations grounds because they provided direct medical services to Maryland prisoners from July 1, 2005 through June 30, 2012.  *Id.,* p. 3 n. 4.  Cobey thereafter voluntarily dismissed his remaining claims without prejudice and the case was closed.  *See id.,* ECF No. 8, ECF No. 9.

In this case, Cobey resurrects and expands the constitutional claims concerning his hip condition.[8]  Cobey also brings claims against the Correctional Defendants concerning the prison grievance procedure.  The Court first summarizes the facts related to Cobey's medical claims and next separately summarizes the facts surrounding his prison grievances.

**A. Medical History**

Cobey is in his late 50s and suffers chronic pain syndrome, osteoarthritis in his pelvis and thigh, and abscesses.  In 2004, Cobey received a total hip replacement and in 2018, underwent hip

---

[8] Cobey summarily alleges that his rights under the First, Fourth, Eighth and Twenty-Third Amendments to the United States Constitution have been violated.  The Court can discern no plausible claim under the Fourth Amendment, which protects against unreasonable searches and seizures, or the Twenty-Third Amendment, which granted District of Columbia residents the right to vote.

3

revision surgery. ECF No. 13-4 (Medical Records); ECF No. 5, Affidavit of Jason Clem, M.D., ¶ 4.

In late November 2016, Cobey reported to Nurse Practitioner Tabulov at his chronic care appointment that he was complying with physical therapy but recently stopped exercising because of constant pain in his left thigh that he described as a 10 out of 10 in severity. Cobey attributed the pain to his hip prosthesis. ECF No. 13-4, pp. 2-4. Cobey also described weakness in his leg, requiring him to hold on to things to move around. Id. Medical notes document that Cobey's left buttock and thigh muscles had atrophied, that he walked with a limp, and that he had been prescribed Neurontin and Baclofen for pain. Id.

At a follow-up appointment, Cobey reported that the medications had not lessened his pain, and so his Neurontin was increased from 100mg to 300mg twice daily. Id. at pp. 5-8. Medical notes from a separate appointment on December 20, 2016 reflect, by x-ray, that Cobey's hip hardware was intact and he was suffering from mild degenerative disc disease (DID). Id., pp. 11-13. Cobey reported that he was experiencing constant pain since his 2004 surgery more than 10 years earlier. *Id.* Cobey was referred for an orthopedics consult. *Id.*

On January 17, 2017, Cobey next saw Nurse Practitioner Tabulov. Cobey had yet to receive his orthopedics consult. *Id.*, pp. 14-17. Cobey reported sharp pain, measuring 12 of 10 in severity, that kept him from sleeping, but that he could work because he remained seated at his job. Id. Tabulov increased Cobey's Neurontin dosage to 600mg twice daily and added Indomethacin 25mg twice daily. Id.

On March 21, 2017, during a telemed consult with orthopedist, Dr. Ashok Krishnaswamy, Cobey reported pain and stiffness that had been plaguing him for the last seven years. Id., pp. 18-21. Dr. Krishnaswamy determined an in-person appointment was warranted, which took place on

April 19, 2017. Id., pp. 25-27. At the end of that appointment, Krishnswamy referred Cobey to UMMS for revision surgery. Id.

On May 4, 2017, Dr. Matera examined Cobey and ordered that he be evaluated by UMMS orthopedics. Id., pp. 28-32. Dr. Matera also increased Cobey's Neurontin dosage to 800mg twice daily. Id. Three weeks later, during a sick call appointment, Cobey reported his left leg was locking up. Id., pp. 33-34. At a follow-up visit, Cobey reported the same problem at sick call and stated he had fallen in his cell. Id., p. 35. Cobey was placed on bedrest and feed-in status until his orthopedic consult. Id.

Prison medical personnel treated Cobey several more times in the coming months, during which Cobey complained persistently about left hip pain and inquiring about surgery. Id., pp. 36-37-43. When his symptoms worsened, Cobey was transported to UMMS Shock Trauma on August 14, 2017. Cobey was referred to Dr. Theodore Manson to undergo revision surgery within the next six months. Id., pp. 44-50.

After some delay and cancelled appointments, Dr. Manson examined Cobey at UMMS on December 6, 2017. Dr. Manson recommended surgery but also discussed with Cobey the risks, benefits and alternatives to undergoing a surgical procedure. Cobey elected to proceed with surgery which was approved on January 3, 2018. Id., p. 68. Cobey underwent hip revision surgery on April 2, 2019. Id., p. 83, albeit after additional sick calls to treat Cobey's pain. Id., pp. 70-74. Two days later, Cobey returned to the prison infirmary, where he received skilled nursing care and recovered well. Id., pp. 84-90.

On April 9, 2019, Dr. Jason Chen examined Cobey. Id., pp. 100-102. Cobey reported that he was feeling well, his pain was tolerable, and he was no longer taking narcotic medication. Id. Two days later, Cobey met with Dr. Clem to discuss discharge instructions, which included

5

participating in physical therapy four to five times a week. The prison provided such therapy only two times per week. Id., pp. 103-104.

On April 14, 2018, Cobey reported chills and fever the night before with a slightly elevated temperature. Id., pp. 109-110. However, upon examination Cobey appeared healing well with no medical issues. Id., pp. 111-114. Dr. Clem continued to see Cobey almost daily through April 22, 2018. Id., pp. 117-124.

Follow up x-rays taken on April 25, 2018 confirmed that the surgery had been successful. Id., p. 134. Cobey continued to see medical care providers and reported a significant reduction in pain since the surgery. He acknowledged the hip and buttock atrophy might never be reduced. Id., pp. 141-146. He was discharged to Housing Unit 8 on April 30, 2018. Id., pp. 145-146. On May 1, 2018, an initial physical therapy evaluation was performed. Id., p. 147. On May 4, 2018, Cobey reported at a chronic care clinic appointment that his pain was manageable with medications. Id., pp. 148-151.

Cobey engaged in physical therapy from May 7, 2018, to June 1, 2018, although treatment providers recommended that he continue with therapy. Id., p. 152-53. A consult for a second round of physical therapy was placed on August 7, 2019, id., pp. 157-158, and approved on August 19, 2018. Id., p. 159. On August 23, 2018, Cobey was evaluated by the physical therapist for sessions twice a week for three weeks. Id., p. 160. That same day he was provided a cane. Id., p. 161.

**B.    Grievance History**

On November 26, 2016, Cobey filed an inmate grievance (ARP ECI 2516-16), alleging an array of medical deficiencies in the treatment of his hip pain. Warden Foxwell dismissed the ARP after investigation. ECF No. 17-7, pp. 5-9. Cobey submitted four additional ARPs to

6

Sergeant Stanford on September 8, 2017 (ECI-2356-17, ECI-2410-17, ECI-2411-17, and ECI-2412-17), all of which were dismissed for failure to comply with ARP requirements.[9] ECF No. 17-7, pp. 3, 4, 40-47. Cobey did not appeal the denial of those grievances through the Inmate Grievance Office ("IGO"). ECF No. 17-8, Decl. of Samiyah Hassan, IGO Admin. Officer.

Cobey alleges that prison staff retaliated against him for complaining. Cobey specifically notes that in early 2018, Defendant Stanford caused him to be housed on the top tier, requiring that he climb stairs. Compl., ECF 1, ¶¶ 85-86. Sergeant Stanford denies knowledge of any bottom tier medical order, nor do the medical records include any such order. *Id.* ECF No. 21-4, Decl. of Sharon Baucom, M.D. ¶ 2. Cobey also claims he was "forced" to work despite serious chronic pain, and that he was subjected to delayed and cancelled medical appointments as reprisal for complaining.

## II. Standard of Review

Because the parties have submitted evidence outside the four corners of the Complaint and have been given reasonable opportunity to present all pertinent material, the Court will treat the motions as ones for summary judgment. See Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(d). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "The party opposing a properly supported motion for

---

[9] Although Cobey contends that Stanford did not process the ARPs properly, the record flatly contradicts this claim.

7

summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the non-movant and draw all inferences in his favor without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses cannot proceed to trial. *Bouchat*, 346 F.3d at 526.

### A. Correctional Defendants

As a preliminary matter, the Court must dismiss the damages claims against all Correctional Defendants in their official capacities. Under the Eleventh Amendment to the United States Constitution, a state as well as its agencies and departments are immune from suit brought in federal court by its citizens or the citizens of another state, absent narrow exceptions not relevant here. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A suit against a state official for acts performed in his official capacity is equivalent to suing the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Although Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman,* 465 U.S. at 100 (emphasis in original).

The Correctional Defendants as are State employees. *See* Md. Code Ann., State Gov't § 12-101(a) (2015) (defining "state personnel"). Accordingly, the damages claims against the

Correctional Defendants in their official capacities are barred by the Eleventh Amendment. *See Pennhurst,* 465 U.S. at 100-01. To the extent that Cobey seeks damages from Correctional Defendants Foxwell, Green, West, or Hanke in their individual capacities, his claims also fail. The record evidence, viewed most favorably to Cobey, demonstrates that these individual Defendants had no direct involvement in Cobey's medical care or otherwise. Further, vicarious liability under the doctrine of *respondeat superior* does not apply in § 1983 claims. *See Love-Lane* v. *Martin,* 355 F.3d 766, 782 (4th Cir. 2004). Supervisory liability instead requires the plaintiff to demonstrate that: (l) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisors response was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) an affirmative causal link exists between the supervisor's inaction and the particular constitutional injury suffered. *See Shaw* v. *Stroud, 13* F.3d 791, 799 (4th Cir. 1994).

Neither the Complaint or any record evidence, construed most favorably to Cobey, meets this test. To the extent the Defendants were involved in denying Cobey's inmate grievances, this alone does not impose liability. *See Atkins v. Md. Div. of Corr.,* No. PWG-14-3312, 2015 WL 5124103, at *6 (D. Md. Aug. 28, 2015). No other evidence would otherwise support the claims. Thus, the Correctional Defendants must be dismissed.

Cobey's remaining claims against the Correctional Defendants sound in retaliation for exercising First Amendment rights to free speech and petition for redress of grievances. Cobey implies that his medical treatment was compromised because he refused to sign an ARP form during the administrative process. Id. ¶¶ 31-36. Cobey also alleges that he was "met with reprisals by prison staff for filing complaints, trying to be seen, or, to receive treatment due to extreme pain,

namely from prison guards, and medical personnel." Id. ¶26. Cobey generally contends that Corrections Defendants retaliated against him by delaying or cancelling his medical appointments, id. ¶¶ 90-92, and that he was "forced to work" despite his extreme pain. Id. ¶100.

To state a claim of retaliation for exercising First Amendment rights, a plaintiff must show that (1) he engaged in protected First Amendment activity; (2) defendants took some action that adversely affected the First Amendment rights; and (3) a causal relationship exists between the protected activity and the defendants' conduct. *See Constantine v. Rectors & Visitors of George Mason Univ.,* 411 F.3d 474, 499 (4th Cir. 2005). While "the constitutional rights that prisoners possess are more limited in scope than the constitutional rights held by individuals in society at large," incarceration "does not divest prisoners of all constitutional protections." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001). "[A] prison inmate retains those First Amendment rights that are not inconsistent with the status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The Fourth Circuit Court of Appeals has held that an inmate's "right to file a prison grievance free from retaliation" is protected by the First Amendment. *Booker v. S. Carolina Dep't of Corrections*, 855 F.3d 533, 545 (4th Cir. 2017). To sustain the claim, the plaintiff must demonstrate that the alleged retaliatory actions would "deter a person of ordinary firmness from the exercise of First Amendment rights," *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

When viewing the evidence most favorably to Cobey, nothing supports that the named Correctional Defendants retaliated against him. Cobey's Complaint allegations in this regard are no more than vague, generalized contentions. He does not identify with any specificity who particularly engaged in such retaliation or aver how such acts were linked to his medical

complaints. Further, the record evidence undermines any claims of retaliation. The record reflects, for example, that Cobey worked because he wanted to, not because he was forced. The record also supports that, contrary to Cobey's claims, he was never assigned favorable tier space for Sgt. Stanford to eliminate. Consequently, mere assertions of retaliation does not, as a matter of law, generate sufficient evidence to survive summary judgment. *See generally Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991); Fed. R. Civ. P. 56(c)(1)(B); *see also Abdelnaby v. Durham D & M, LLC*, No. GLR-14-3905, 2017 WL 3725500, at *4 (D. Md. Aug. 29, 2017) (quoting *Beale v. Hardy*, 769, F.2d 213, 214 (4th Cir. 1985)).

**B.    The Medical Defendants**

The Medical Defendants lodge an array of attacks against Cobey's claims. Assuming for purposes of this analysis that the Medical Defendants are state actors subject to suit pursuant to 42 U.S.C. §1983, Cobey's claim fails on the merits.

The Complaint, most charitably construed, pleads a violation of Cobey's Eighth Amendment right to be free from cruel and unusual punishment by virtue of grossly inadequate medical care. To state such a claim, a plaintiff must demonstrate that a defendant's acts or omissions amounted to "deliberate indifference" to a serious medical need. *Estelle* v. *Gamble,* 429 U.S. 97, 106 (1976). "Deliberate indifference is a very high standard - a showing of mere negligence will not meet it." *Grayson* v. *Peed,* 195 F.3d 692, 695-96 (4th Cir. 1999). Rather, the plaintiff must demonstrate that he was, objectively, suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994).

Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1,9 (1992). A medical condition is serious when it is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve,* 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan,* 196 F.3d 839, 846 (7th Cir. 1999)). As to the subjective prong, the plaintiff must show that the prison official "'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey,* 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer,* 511 U.S. at 837); *see also Rich v. Bruce,* 129 F.3d 336, 340 n.2 (4th Cir. 1997) ("True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."). "Actual knowledge or awareness on the part of the alleged inflicter" becomes "essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.,* 58 F.3d 101,105 (4th Cir. 1995) (quoting *Farmer,* 511 U.S. at 844). Importantly, the patient's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977)).

It is beyond dispute that Cobey's medical issues were objectively serious. His 2004 hip replacement failed, causing him prolonged pain, physical atrophy and loss of motion. However, the medical care he received, although not ideal, does not reflect a staff deliberately indifferent to Cobey's serious medical needs. Cobey needed ever increasing dosages of medication to curb the pain, and he received them. Cobey required regular chronic care and emergent medical treatment, which he also received. Cobey underwent a series of diagnostic tests, both in-house and through

outside specialists, to address his progressively degenerative condition. Finally, Cobey received revision surgery and follow-up physical therapy. No reasonable trier of fact, therefore, could conclude that the Medical Defendants were deliberately indifferent to Cobey's serious medical needs.

Cobey's contentions effectively amount to a disagreement about treatment modalities. Cobey disputes the sufficiency of his physical therapy and the timing of his surgery, for example. However, disagreements between a prisoner and medical providers over proper medical care alone do not state a § 1983 claim absent exceptional circumstances. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (*citing Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)); *accord Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) ("[W]e have consistently found such disagreements to fall short of showing deliberate indifference."). Nor can Cobey demonstrate that the lapses in medical care, even if not ideal, were so egregious that they amount to deliberate indifference to Cobey's medical needs. *See Gamble*, 429 U.S. at 105-06. Because the record viewed most favorably to Cobey cannot sustain his constitutional claims as to the Medical Defendants, summary judgment is granted in their favor.

Cobey also appears to assert common law claims of medical negligence against the Medical Defendants. The Court declines to exercise supplemental jurisdiction over such claims. *See* 28 U.S.C. § 1367(c) (stating that a district court "may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction."). These claims are dismissed without prejudice so that Cobey may pursue the claims in state court, if possible.

**IV.     Conclusion**

The Correctional Defendants' Motions, ECF Nos. 17 and 21, are granted; all Correctional Defendants are dismissed in their official capacities and are granted summary judgment as to all remaining claims.  The Medical Defendants Motion (ECF No. 13) is also granted.  State common law claims as well as all claims against the unserved Defendants, Sterling and CMS, are dismissed without prejudice.  A separate Order follows.


Date:   August 14, 2019                             /S/
                                                    Paula Xinis
                                                    United States District Judge